(33 App. Div. 300.)

In re SAWYER et al.

. (Supreme Court, Appellate Division, First Department.   October 7, 1898.)

ASSIGNMENT FOR BENEFIT OF CREDITORS — CLAIMS — SUBROGATION TO INSOL-
VENT'S SECURITY—AMOUNT ALLOWABLE.
    Acceptors of a bill for the accommodation of the drawer had advanced
him money to buy tobacco, on which the acceptors were to have a lien.
Proceeds of the bill were paid to the accommodation acceptors, and the
tobacco bought and deposited in their warehouse.   Drawer and acceptors
both became insolvent, and the bank which discounted the bill was, by
order of court, subrogated to the acceptors' rights in the tobacco, proceeds
of which were paid to the bank on account of the acceptance.   Held, that
the bank could prove its claim against the assignee of the acceptors only
for the balance unpaid on the bill, since their right to resort to the se-
curity did not arise from any contractual relation with the acceptors,
whereby the lien was to be given in addition.to their personal liability.

Appeal from judgment on report of referee.

Claim of the Harris-Seller Banking Company in the matter of the
assignment of Sawyer, Wallace & Co.   From an order confirming
the report of a referee refusing to allow the full amount of its
claim, claimant appeals.   Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY,
McLAUGHLIN; and INGRAHAM, JJ.

Robert Van Iderstine, for appellant.

Edgar J. Nathan, for respondent.

RUMSEY, J.   This is an appeal from an order of the special term
confirming.the report of a referee, refusing to allow the full amount
of the claim of the appellant against the assignee of Sawyer, Wal-
lace & Co., but allowing the claim at the sum of $800.41.   The
facts are not disputed.   Sawyer, Wallace & Co. were tobacco ware-
housemen in the city of New York, having also a warehouse in
Louisville, Ky., and were accustomed to advance money to their
customers or accept bills of exchange drawn by them; the advances
and acceptances being secured by tobacco of the customers placed
with that firm for sale on commission.   In July, 1890, one Skeldon,
a customer of Sawyer, Wallace & Co., applied to them to accept a
bill of exchange drawn by him upon them, in order that he might
use the proceeds of the bill to purchase tobacco.   They agreed to
accept the bill for his accommodation.   To enable Skeldon to pur-
chase the tobacco, they advanced to him $2,300.17.   Skeldon drew
a draft upon them for $2,500 at 20 days, which was discounted by
the Harris-Seller Banking Company, a corporation doing business
in Versailles, Ky.   The proceeds of the draft, amounting to $2,-
487.23, were paid to Sawyer, Wallace & Co., who used $2,300.17 to
replace the money advanced to Skeldon to enable him to buy the
tobacco, and applied the remainder of the proceeds to reimburse
themselves for some other claim owing by Skeldon.   With the
$2,300 Skeldon bought on his own account 22 hogsheads of tobacco,
which were sent to Sawyer, Wallace & Co., to be sold by them on
commission.   It was arranged between them and Skeldon that they
were to have a lien upon the tobacco for the amount of the accom-

modation acceptance of the $2,500, and that, out of the net proceeds of the sale of the tobacco, they were to repay themselves the amount of that draft if they paid it. The draft was accepted by Sawyer, Wallace & Co. Soon afterwards Sawyer, Wallace & Co. and Skeldon both failed, and Sawyer, Wallace & Co. made an assignment for the benefit of creditors, and their assignee took possession of this tobacco, which was not yet sold. In September, 1890, the Harris-Seller Banking Company brought an action in the Louisville chancery court in Kentucky, alleging substantially the facts before, stated; that the draft accepted by Sawyer, Wallace & Co. was presented for payment at its maturity, and not paid, and was duly protested. After having alleged the agreement under which the tobacco was held by Sawyer, Wallace & Co., and that they had upon it a first lien to secure the payment of the acceptance of the draft for $2,500, it prayed that it be subrogated to the rights of Sawyer, Wallace & Co.; that the tobacco be sold by the assignee, and so much of the proceeds of it be paid over to them as were necessary to pay the draft. The assignee answered this petition, denying certain of the facts, and issue was finally joined by the service of a reply by the plaintiff. A judgment was finally entered in that action on the 27th day of January, 1892, determining that the Harris-Seller Banking Company had a lien for $2,500, with interest upon the tobacco, and requiring the assignee to sell it, and to pay into court the proceeds thereof, which proceeds, when paid, were to be delivered to the plaintiff, the Harris-Seller Banking Company. The tobacco was sold pursuant to this judgment, and the assignee paid into the Louisville chancery court the sum of $1,699.59, being the net proceeds of the sale of the tobacco; and that sum was thereafter, and on the 11th day of February, 1892, paid to the Harris-Seller Banking Company, on account of said acceptance. After that had been done, the Harris-Seller Banking Company presented to the assignee a claim against Sawyer, Wallace & Co. for the full amount of the draft, with interest from the time it became due. This claim was disputed by the assignee, and it was referred to a referee, to determine what the amount due upon the claim was. The referee reported that the amount of $1,699.59, which had been paid upon the claim, should be deducted from the amount, and that the Harris-Seller Banking Company should be allowed to prove only for the remainder, which amounted to $800.41. The referee's report was confirmed, and, from the order confirming it, this appeal is taken.

The appellant claims that the case is governed by the determination of the court of appeals in the case of People v. E. Remington & Sons, 121 N. Y. 328, 24 N. E. 793, which is reported in the supreme court in 54 Hun, 505, 8 N. Y. Supp. 34. The principle laid down in that case is founded upon good sense, and undoubtedly is the law of this state; and, if that principle governs the determination of this case, it should be applied to it, and the result necessarily would be to reverse this order. But the facts in the case of People v. E. Remington & Sons are quite different from those in the case at bar. The corporation of E. Remington & Sons had borrowed

from the Ilion National Bank a large amount of money, and had from time to time delivered to the bank securities which were held by the bank as collateral security for the notes of E. Remington & Sons, which had been discounted by the bank, and upon which the debt was due. The corporation became insolvent, and proceedings were taken by the attorney general to procure its dissolution. After receivers had been appointed, the Ilion National Bank presented to them a claim for the full amount of the notes which it held against the insolvent corporation, and claimed that it should be permitted to prove the full amount of its debt. The receivers insisted, however, that the bank should be required to realize upon all the securities which it held collateral to these notes, and should be permitted to prove its debt only for the remainder after deducting the amount realized upon the securities; and the question presented to the court was whether the receivers were right in their contention. It was held by all the courts that the bank could not be compelled to realize upon its securities before proof of its claim, but that it was entitled to prove its claim for the full amount, without regard to the fact that it held certain securities to protect itself, upon which it had not yet realized the money, and the proceeds of which had not yet been applied to any part of the debt. The court held substantially that the fact of insolvency of the debtor did not change the legal relations between it and the creditor, and that as the creditor could not be compelled to realize upon his securities, and apply them, before proceeding to judgment against the debtor upon his debt, if the debtor had been solvent, he could no more be required to do it after the debtor had become insolvent; that he was entitled to proceed for the full amount of his debt, and obtain an adjudication fixing the amount, without regard to the existence of the securities. The reason of the rule, as stated by Judge Gray, in delivering the determination of the court, was that, by the contract between the debtor and the creditor, the security which was given was additional to the personal liability of the debtor; that the creditor had the right to rely upon both classes of securities until his debt was finally paid; that the court had no authority to change these rights which had been acquired by contract; and that the fact of insolvency had no effect upon them. The court adopted in its opinion the words of Lord Cottenham in deciding the same question in the case of Mason v. Bogg, 2 Mylne & C. 443, that the creditor in such a case had a double security,—he had the right to proceed against both, and to make the best use he could of both. "Why he should be deprived of the right because the debtor dies, and dies insolvent, it is not easy to see." So, it will be seen that the decision stood purely upon the fact that the creditor, by his contract, had acquired the security which he was entitled to hold in addition to the personal liability of the debtor to make him good for any failure of the debtor to respond personally for the amount of his debt. All the cases which are cited as establishing the same rule proceed upon the same ground. Based upon this reason, the rule is not only well established by authority, but well founded in reason. The courts distinguish it from the arbi-

trary rule which is adopted in proceedings under the bankruptcy laws, which have furnished reason for the action of those courts which have held the contrary rule.

In the case at bar the facts are quite different. Although Sawyer, Wallace & Co., after their acceptance of the draft, were the principal debtors so far as the Harris-Seller Banking Company were concerned, they accepted it for the accommodation of Skeldon; and, as between them and Skeldon, they had a right to call upon Skeldon to pay the draft, and protect them. The tobacco which they held was not their property, but it was the property of Skeldon, and was held by them to protect them if they should be called upon to pay this acceptance. So far as the Harris-Seller Banking Company was concerned, it had no interest whatever in this tobacco as long as Sawyer, Wallace & Co. were solvent. It relied upon their personal responsibility for its protection. So far as the tobacco was concerned, there was no contractual relation between the bank and Sawyer, Wallace & Co. No claim of anything of that kind is made. It did not even claim a lien upon it, but it claims to be subrogated to the lien which Sawyer, Wallace & Co. had upon it, working out that claim through the right which Sawyer, Wallace & Co. had to resort to the tobacco to repay themselves if it should be necessary for them to pay the draft which, as between them and Skeldon, Skeldon was to pay. So, it will be seen that there was no contractual relation between Sawyer, Wallace & Co. and the Harris-Seller Banking Company by means of which Sawyer, Wallace & Co. gave to their creditor two remedies for their debt. The creditor procured this additional security only because it interfered with the contract between Skeldon and Sawyer, Wallace & Co., and adopted it so far as to make Skeldon's property first liable for the debt, and took the property of Skeldon which Sawyer, Wallace & Co. were entitled to have to secure them for what they paid upon the draft, and applied it to an original payment, instead of a repayment for the secondary liability of Sawyer, Wallace & Co. The case is not one where the creditor holds security given to him by the debtor for additional protection, but it is a case where the creditor asserting an equitable right, not the result of contract, has procured the property of a third person, not the debtor, to be applied to the payment of his debt, to the detriment of that debtor. When the claim was made against the assignee of Sawyer, Wallace & Co. upon which the referee finally adjudicated, the claimant had, as the stipulated facts agree, received $1,699.59 on account of the acceptance. This had been received by it, from the property of the person who, so far as the acceptor was concerned, was bound to pay this draft. If Mr. Skeldon, remaining solvent, had on the 11th day of February, 1892, paid to the Harris-Seller Banking Company $1,699.59 on account of this acceptance which had been received by them on that day, nobody would hesitate to say that the remainder of the debt was $800.41 only, and that Sawyer, Wallace & Co. were liable only for that sum. There can be no legal distinction growing out of the fact that, instead of the money

being received from Skeldon, it was received from Skeldon's property sold for the benefit of the Harris-Seller Banking Company. In each case the same result is reached. $1,699.59 have been taken out of Skeldon's pocket, and paid to the Harris-Seller Banking Company upon the acceptance, and received by them upon it; and the necessary result is that the amount of the acceptance was then diminished by so much.

It is said that, if the creditor holds securities of third persons, he may prove his whole debt, and resort to the security for any deficiency, and that he need take no account of the fact that he holds the securities. Undoubtedly, that is so; but if the creditor, having received securities of third persons, has realized upon them, and applied the amount thus realized upon his debt, that operates as a payment of his debt to that extent, and the debt is necessarily diminished by the amount received. In the case of People v. Remington it appeared that the bank had converted into money a portion of the securities which it had received, as collateral to its debt; and it was insisted that the money so received should be applied as a payment upon the debt. The court of appeals do not appear to have considered that claim, but the court at general term (54 Hun, 505, 8 N. Y. Supp. 34) did consider it, and held that the bank was not called upon to deduct the amount of money in its hands from the amount of the claim, only because it had not been applied as a payment. But in this case the stipulated fact is that this $1,-699.59 was claimed by the Harris-Seller Banking Company upon account of the draft, and was paid to them on account of it on the 11th day of February, 1892. It is not a case where the banking company holds securities which the debtor has given to it as further security, but where it has received money to apply upon its debt from one who is in the last resort bound for its payment. There is no aspect of the case in which it can be said, as it seems to me, that the Harris-Seller Banking Company, by the action taken in the Louisville chancery court, did not diminish the amount of its claim. It had never acquired from the principal debtor any double security. What it took belonged to Skeldon, and had been given by Skeldon to Sawyer, Wallace & Co., to secure them. If Skeldon had sold the tobacco, and paid it to them upon this draft, undoubtedly it would have thus far diminished their debt. It makes no difference, from a legal point of view, whether Skeldon sold the property of his own free will, or whether the Harris-Seller Banking Company procured it to be sold, and took the proceeds, and applied them. In either case the Harris-Seller Banking Company received, to apply upon its draft, the money of Skeldon which Sawyer, Wallace & Co. were entitled to have to protect them against their payment. Having received this money, and applied it upon their draft, they were not entitled to prove against the assignee anything more than the remainder, after deducting the amount of the payment.

For these reasons, the order should be affirmed. All concur.